## RIGGS *vs.* PFISTER.

1. The appropriation act, approved February 10, 1852, by which the sum of two hundred dollars per annum is appropriated to the Quarter Master General, as his annual salary for the years 1852 and 1853, postpones for two years the operation of the general statute changing the compensation of that officer; and he is entitled during those years to the sum thus specifically appropriated. (Pamphlet Acts 1851-2, 83, 88, 529; and Military Code of 1851-2, 86.)

ERROR to the Circuit Court of Montgomery.

Tried before the Hon. JNO. GILL SHORTER.

Amand P. Pfister applied to the Circuit Court of Montgomery, for a *mandamus* against Joel Riggs, Comptroller of Public Accounts of the State of Alabama, commanding him to draw his warrant on the State Treasurer, in favor of said Pfister, for fifty dollars, the amount claimed by said Pfister as his quarter salary as Quarter Master General of the State, for the quarter ending April 20, 1852. Riggs appeared by his counsel, and resisted the motion; but the Circuit Court decided that Pfister was entitled to the amount claimed by him, and ordered the *mandamus* to issue. From this judgment Riggs sued out a writ of error, and now assigns it for error in this court.

M. A. BALDWIN, Attorney General for the State, and A. MARTIN, for plaintiff in error.

H. C SEMPLE, *contra*.

CHILTON, J.—This was a motion in the court below, by Pfister against Riggs, the Comptroller, for a *mandamus*, requiring the latter to issue his warrant on the treasury for fifty

dollars, alleged to be due to Pfister as his quarter salary as Quarter Master General, ending the 20th April, 1852. The Circuit Court granted the writ, and the Comptroller seeks a revision and reversal of the judgment, and insists by his counsel, that the law granting $200 as a salary to the Quarter Master General has been repealed, and different provision for his compensation provided by the legislature at its session of 1851-2.

It is somewhat remarkable, that the legislation upon this subject at the last session has left it in a most confused state, and such conflicting provisions were enacted as to render it impossible to reconcile them, in the attitude in which they are presented before the court by this bill of exceptions.

The Military Code, prepared by Generals Crabb and Bradford, provided a salary of two hundred dollars as the annual compensation to the Quarter Master General. Thus stood the law at the commencement of the last session, when several acts were passed, each separate and distinct from the others, but all approved on the 10th day of February, 1852. There is nothing from which we may gather any knowledge as to the actual order in which they were signed. One of these acts provides, that the compensation of the Quarter Master General shall be four dollars per day for every day he is actually employed in the duties of his office, which shall be paid upon an account stated, specifying the number of days employed, sworn to by him, and certified to be correct, which shall be paid out of any money in the treasury not otherwise appropriated: *Provided*, the compensation of the Quarter Master General shall not exceed one hundred and fifty dollars per annum; and by the fourth section of this act, so much of the Military Code above mentioned as allows $200 as a salary to the Quarter Master General, is expressly repealed. See Pamphlet Acts of 1851-2, pp. 82, 83.

An amended Military Code was also adopted at the last session by joint resolutions, (see Acts of 1851-2, p. 529,) and in this amended code it is provided, that the Quarter Master General shall enter into bond, &c., in the sum of $5000, with security, &c., and shall receive a salary of two hundred dollars. See Military Code of 1851-2, p. 36.

Again, the general appropriation bill, making provision for

Riggs v. Pfister.

the payment of the several officers, &c., for the years 1852 and 1853, provides, that the sum of two hundred dollars per annum be, and the same was thereby appropriated to be paid to the Quarter Master General. See Acts of 1851–2, p. 88.

It will 'be seen that there is a direct conflict between the provisions contained in the amended Military Code, and the act repealing the compensation allowed under the previous code, as to the salary to be paid the Quarter Master General. And it is manifest the legislature, by each of these, intended to adopt a general law, defining the compensation to be paid to that officer.

It is unnecessary now for us to decide upon the rights of the Quarter Master General, under these general statutes. It is sufficient, that we find a special statute voting an appropriation of two hundred dollars per annum for the years 1852 and 1853, and this statute postpones the operation of the general law fixing the compensation after the year 1853. The sum of two hundred dollars for each of these years has been specifically appropriated to be paid this officer, and it is not for the court to say that this specific appropriation shall be thwarted, because it may conflict with the provisions of a general law. It is more reasonable to infer that the legislature intended both the general and specific acts should stand— the special, as applicable to the two years to which, by its terms, it is limited; the general statute, as regulating the compensation after that period—than to suppose that they designed to produce a direct conflict by voting an appropriation to be paid to this officer, declaring by the general law that it should not be paid. It is the duty of the court so to construe' statutes as to make them harmonize, if it can be done, and as the construction which we place upon the statute making the appropriation, agrees with one of the general acts, and allows the other to stand as a general statute, only postponing its operation until the specific sum awarded shall have been exhausted, we think it better accords with the legislative intention than any other we can adopt.

The court below, in ordering to be paid what the legislature has specifically appropriated, and required to be paid for the years 1852 and 1853, did not err. We repeat, that for these two years this specific appropriation takes the compen-

sation out of the influence of the general law which after-wards must regulate it, and to that extent must be considered as modifying the general statute.

Let the judgment be affirmed.