STATE OF MISSOURI *ex rel.* SANDFORD B. KELLOGG, Petitioner, *v.* WILLIAM BISHOP, State Treasurer, Respondent.

1. *Statutes—Construction—Evidence.*—When the mind of the Legislature has been turned to the details of a subject and it has acted upon it, a subsequent statute in general terms, or touching the subject in a general manner, and not expressly contradicting the original act, will not be construed as intended to affect the more particular or positive previous provisions, unless it be absolutely necessary so to do in order to give any meaning to the words of the later statute. The law does not favor a repeal of statutes by implication.

2. *Revenue — Union Military Bonds — Appropriations.* — The act of March 9, 1863 (Acts 1863, p. 25), appropriated the funds therein named, when the same should be received, to the payment of the Union military bonds to be issued under said act. The bonds issued under the act of February 25, 1865 (Acts 1865, p. 59), were to be paid out of the same fund, and the act of March 13, 1866 (Acts 1866, p. 95), provided the method of payment. The acts of March 11, 1867, and March 12, 1867, providing for a School fund, &c., did not repeal the provisions of the preceding acts providing for the payment of Union military bonds.

## Petition for Mandamus.

*Knox & Smith*, for petitioner.

The act of March 9, 1863, under which the Union military bonds were issued, created a fund called the "Union military fund," and pledged the same for the payment and redemption of all the bonds issued, principal and interest.

The act appropriates certain taxes "levied and to be collected" to that fund ; in like manner it appropriates "all money that may come into the treasury of the State from appropriations made by the Congress of the United States to the State of Missouri for the purpose of paying the military forces thereof, or for indemnity for expenses incurred in suppressing the rebellion." All money appropriated to said fund "shall be set apart by the Treasurer for that purpose only"; that is, for the redemption of Union military bonds, principal and interest.

Congress, by an act passed April 17, 1866, made an appropriation to the State of Missouri for the purpose of paying the military forces thereof, and for expenses incurred in suppressing the rebellion, to the amount of six and a half millions, and $600,000 of it has been paid into the treasury of the State. By the act of March 9, 1863, that money is not only pledged for the payment and redemption of outstanding overdue Union military bonds, but the Treasurer is directed to set it apart for that purpose only.

In contemplation of law, the appropriation by Congress, as soon as made, was set apart and pledged in good faith most sacredly for the payment of the Union military bonds. When

the draft for $600,000 was signed and delivered, payable to the order of the State Treasurer, in contemplation of law the money was in the Union military fund, available for the payment or redemption of said bonds. The act of March 12, 1866, directs how said fund shall be applied or paid out in redemption of overdue Union military bonds. The Treasurer has no discretion.

The question now arises, have those two acts of March 9, 1863, and March 12, 1866, or either of them, been repealed? The recent acts of March 11 and 12, 1867, creating the School fund, and to provide for the payment of the State indebtedness, do not in terms repeal them. In the absence of express words, a subsequent act in regard to the same subject matter will not be construed to repeal the former unless totally inconsistent with it; in other words, the court will carry out and give effect to both laws if such construction be possible. But when the repeal of a law is in direct violation of the pledged public faith, and will work injustice and injury to the State credit and creditors, and in violation also of the vested rights of those who received and hold said Union military bonds, relying upon their prompt redemption out of a special appropriation made by Congress to the State, and guaranteed or set apart for that purpose only, nothing less than clear, express words to that effect would warrant the conclusion that the Legislature intended to repeal the law.

An apparent inconsistency or contradiction consists in the use of the word "first," in the act creating or providing a "School fund," to designate the moneys set apart and to be invested in United States bonds. The object of the law is effected if $1,500,000 are set apart out of the appropriation made by Congress from the Union military fund after redeeming the pledged faith of the State in the payment of the Union military bonds. The time in this case is not material; the U. S. bonds can be purchased at any time, and the interest accruing is alone applicable for the use of the Public Schools. The amount appropriated by Congress is ample for the purpose of said law, being six and a half millions.

The word " first," in said act providing for a School fund, obviously should be construed to mean the first money received from the appropriation by Congress available for the purpose of the law.  The word "first" was used in said law in reference to the pending act for the payment of the State indebtedness out of the surplus received from Congress after paying the Union military bonds.  It is a well known fact that it was so used, and the passage of the law providing for a State School fund was insisted upon by its friends as a condition precedent to the passage of the law to pay the State overdue coupons out of the surplus of said appropriation.

Attorney-General, for respondent.

HOLMES, Judge, delivered the opinion of the court.

The petitioner states that, on the first day of May, 1867, he presented at the office of the State Treasurer certain "Union military bonds" of the issues of 1863 and 1865, amounting in all to some forty thousand dollars, and requested the Treasurer to receive, arrange and pay the same as required by law; that on that day the State Treasurer had in the treasury, or subject to his order, besides other money, the sum of six hundred thousand dollars received from the appropriations made by Congress to the State of Missouri for expenses incurred in suppressing the rebellion, and being money which had been appropriated and pledged by the act of the General Assembly of the State, approved March 9, 1863 (Laws 1863, p. 25), for the purpose of redeeming Union military bonds; that said money, so being in the treasury, was sufficient to pay *all* the bonds presented by the petitioner on the day aforesaid, and that the Treasurer had refused to pay the same:  wherefore, he prays for a writ of mandamus.

The answer of the defendant admits the facts stated in the petition, but alleges in justification of his refusal to pay said bonds, that the money received out of the appropriation by Congress had been specifically disposed of and appropriated

under the acts of the General Assembly of the State. The one entitled "An act creating a permanent School fund," approved March 11, 1867; and the other entitled "An act to provide for the payment of the interest upon the State debt," approved March 12, 1867 (pp. 166, 168, Laws 1867)—first, for a permanent School fund, and second, "for the Seminary fund and to pay outstanding Union military bonds," and for the payment of interest on the public debt incurred on account of railroads; that the said sum of six hundred thousand dollars was the first and only money yet received into the treasury from the United States under the act of Congress, and that, therefore, he was not required nor permitted by law to pay these bonds of the plaintiff out of this money. The act of March 9, 1863, created a fund to be called the "Union military fund," which was made to consist of "all moneys that may come into the treasury of the State from appropriations made by the Congress of the United States to the State of Missouri for the purpose of paying the militia forces thereof, or for indemnity for expenses incurred in suppressing the rebellion, or by loan for that purpose, and of other moneys to arise from taxes and other sources mentioned"—Laws 1863, p. 27, § 9.

By the act of the General Assembly, approved February 20, 1865 (Laws 1865, p. 59, §§ 1, 6), another issue of Union military bonds of like description was authorized and made payable out of the Union military fund created by the previous act, provided that if Congress, during its then present session, should pass an act to furnish the means of paying the liabilities of the State incurred for military defence, then the bonds thereby authorized should not be issued, but the militia should be paid out of the funds thus furnished by Congress.

The act of March 12, 1866 (Laws 1866, p. 95), provided in what manner these Union military bonds should be presented, arranged and paid, and in what order of priority between the several issues, so long as any means remained in the fund for that purpose.

All these bonds were issued, negotiated and received by the holders thereof on the strength of these acts, and on the credit of the fund so created and pledged for their redemption.

By the act of March 11, 1867, above cited, a permanent School fund was created, and there was thereby "appropriated the sum of one million five hundred thousand dollars out of the *moneys to be and first received* from the United States under the provisions of the act of Congress entitled "An act to reimburse the State of Missouri for moneys expended for the United States in enrolling and equipping and provisioning the militia forces to aid in suppressing the rebellion, approved April 17, 1866, which appropriation shall be held and sacredly preserved as a Public School fund."

On the next day the act of March 12, 1867, was passed, by which, among other things, it was provided that all the moneys received under the act of Congress aforesaid, " after reserving out of *the first moneys so received* fifteen hundred thousand dollars to carry out the provisions " of the act creating a permanent School fund, " and a further deduction of five hundred thousand dollars for the Seminary fund, and to pay outstanding Union military bonds," should, by order of the Governor, be placed as fast as received from the United States on deposit in bank in New York, to the credit of the State, to be paid, as the commissioners of the State interest fund should direct, upon the overdue coupons of the State bonds issued for certain railroads.

There is no room for doubt that these bonds of the plaintiff were payable out of the Union military fund in the manner prescribed by the statutes, nor that this fund, which was created and solemnly pledged for their redemption, included the anticipated appropriation by Congress, which was made for the very purpose of indemnifying the State for the expenses incurred in suppressing the rebellion, and for the very object for which these bonds were issued and the fund created ; and all the moneys which were to come into this fund, under the act, were specifically appropriated to the purpose

of redeeming these bonds. It is clear also that the moneys which have been received by the Treasurer from the United States, under the act of Congress, and placed subject to his order, are precisely of the character and description of the appropriations contemplated by the Legislature in the act of 1863.

The State Treasurer rests his objection to paying these bonds out of the money received from this appropriation by Congress upon what he conceives to be the correct construction of the acts of March 11 and 12, 1867. It may be presumed that his refusal proceeds rather from a reasonable anxiety to be surely protected in his official action than from any disposition to evade his duty under the laws ; and the determination of the case depends upon the construction to be given to these two acts.

The defendant's construction is, that the words *"to be and first received,"* and *"the first moneys received,"* refer strictly to the time of reception, and that the appropriation is absolute of this money to the specific objects contemplated by those acts only. It is plain that if this construction were correct the result would be, that the Legislature has repealed, and intended to repeal, the former laws, by which this money was specifically appropriated and solemnly pledged for the redemption of Union military bonds, and diverted the money from the Union military fund in plain derogation of the act and pledge of the previous Legislature, and in direct violation of the honor and good faith of the State.

We may unhesitatingly assume in the outset that no such intention is to be imputed to that honorably body in the passage of these acts, unless the former acts have been thereby repealed in express words, or by necessary implication ; so that the several enactments cannot admit of any other reasonable construction.

Let us see, then ; and first, it may be observed that there are no expressed words of repeal in either of the two acts. The subject matter of the former law was not then directly in question before the Legislature. The objects contem-

plated by the later acts were the creation of a permanent School fund, the restoration of the Seminary fund, and the payment of interest on the public debt.   The Union military bonds had been to a large extent paid off out of moneys coming into the fund from the other sources mentioned in the act of 1863.   The appropriation by Congress was greatly larger than the amount required to pay what remained unpaid of these bonds, and it is fairly to be inferred that it was the purpose of the legislative mind to dispose of the whole remainder of that appropriation, after the particular object for which it had been previously appropriated, and was expressly granted by Congress, had been fully answered under the former laws.   The two acts were pending before the Legislature at the same time ; one being passed on one day and the other on the next.   It may be distinctly gathered that the chief object was to secure, first, out of this disposable subject a permanent School fund, and second, the extinguishment of the public debt.

In the second act, looking to the public indebtedness and the appropriation by Congress, they begin by saving out of the appropriation, first, the Public School fund created the day before, and next, a further deduction of half a million for the Seminary fund, and also, and over and above all, the amount necessary "to pay Union military bonds " (for the payment of which the whole appropriation had been already and long before solemnly appropriated and pledged) ; and lastly, the whole remainder was to be applied to the overdue coupons on the State bonds issued for railroads.

In this view, the words *first received* may fairly and justly be interpreted to mean money first received into the treasury and disposable for the objects contemplated by these two acts, not already appropriated to another specific purpose for which the faith of the State had been pledged, and was therefore not to be touched ; and that the word *first*, in the mind of the Legislature, referred to the first object, the permanent School fund, in preference to the second object, the payment

of the public debt, and not at all to the mere date and absolute time of reception.

The introduction of the words "*and to pay* outstanding Union military bonds" into this second section of the act of March 12, is somewhat loose and peculiar. It might be conjectured that a few words, such as *the amount necessary*, may by some accident have been dropped out of the draft of the bill; but it is unnecessary to resort to any supposition of this kind, for the true meaning and design of the act to save and except, out of the appropriation then intended to be made, enough to answer the existing appropriation for military bonds, may be clearly seen by looking through the mere forms of expression into the real object, purview and intention of the statutes.

The rule of construction which has been laid down on unquestionable authority, as applicable to a case of this kind, is, that "when the mind of the legislator has been turned to the details of the subject, and he has acted upon it, a subsequent statute in general terms, or touching the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provision, unless it is absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all"—Sedgw. on Stat. & Const. Law, 123. The law does not favor a repeal by implication unless the repugnance be quite plain; and two seemingly repugnant statutes should, if possible, have such construction, that the latter may not be a repeal of the former by implication—Dwar. on Stat. 533.

Applying this and all other rules of construction to these statutes, we cannot doubt that the foregoing is the proper view to be taken of them; that there is no repeal of the former laws by express words or by necessary implication; that there is no essential repugnancy, but that all may stand consistently together; that this money belongs to the Union military fund, and is applicable, first of all, to the redemption

of these Union military bonds until the same are fully paid off; that such was the intention of the Legislature, and must be the proper legal effect of all these laws taken together; and that there has been no intention, nor act of the Legislature, amounting to a breach of the public faith solemnly pledged. We should be doing injustice to ourselves, to the Legislature, and to the State, could we even think of holding otherwise.

A peremptory mandamus will therefore be ordered. The other judges concur.

