PEOPLES TRUST & SAVINGS BANK v. HENNESSEY ET AL.

[No. 12,254. Filed October 14, 1926. Rehearing denied March 10, 1927. Transfer denied December 17, 1930. Petition to reconsider denied February 20, 1939.]

258

*Sallwasser & Sallwasser*, for appellant.

*Osborn, Osborn & Link*, for appellees.

McMAHAN, P. J.—Appellee John C. Hennessey and his wife, Kate Hawley Hennessey, owned a number of lots in the city of LaPorte, which were assessed as benefited on account of a certain street improvement. John C. Hennessey, hereinafter referred to as "appellee," signed an agreement waiving any irregularity in the proceedings, and in consideration of being given the right to pay the assessments in 10 annual installments, agreed to pay the same as the several installments became due. The assessments against the several lots owned by appellee amounted to $721. Improvement bonds payable to bearer were issued and delivered by the city to the contractor in an amount equal to the aggregate of all of the assessments for which waivers had been filed. The first installment of the principal and interest on these assessments became due and payable on the first Monday in May, 1913. These bonds were in series, each series being for one-tenth of the amount of the assessments for which waivers had been filed, and were payable in one, two three, four, five, six, seven, eight, nine, and ten years. The interest on each bond was payable semi-annually, and was represented by coupons which were attached to the several bonds. Appellant owned and held certain of said bonds and interest coupons in the

aggregate in excess of the amount of the assessments on the lots so owned by appellee. No part of the assessments on appellees' lots, or any interest thereon, has ever been paid.

On March 14, 1923, appellant filed its complaint against appellees, alleging the signing and filing of said agreement by John C. Hennessey, and asking that the lien of said assessments on appellees' lots be foreclosed and for a personal judgment against John C. and Kate Hawley Hennessey. No copy of the agreement was filed with this complaint. On March 5, 1924, an amended complaint was filed, to which a copy of said agreement was attached. Answers in denial, and pleading the five and ten-year statutes of limitations were filed.

The court denied appellant the right of foreclosure, but rendered a personal judgment against appellee for the full amount of the assessments against his lots, with interest thereon; hence this appeal.

Appellant contends the court erred in refusing to foreclose the improvement lien. Appellee has filed a cross-assignment of error, and contends the court erred in rendering the personal judgment against him.

Section 113 of the Municipal Code, Acts 1905, p. 219, was in force when the improvement in question was made and the waiver signed and filed by appellee. This section was copied from an act concerning cities having a population of over 100,000 (Acts 1891, p. 137, §79), and provided that anyone desiring to pay his assessment in installments should enter into a written agreement that, in consideration of such privilege, he would make no objection to any illegality or irregularity with regards to the assessment against his property and would pay the same as required by law.

Section 115 of the Act of 1905, as amended (Acts 1907, p. 550, §3), provides that such bonds shall be payable out of the funds actually collected by the city, and

gives the contractor or his assigns an option to demand and have issued to him a bond, with coupons against the property of each person who shall have elected to pay in installments. Reference is also made to the privilege of making prepayments, with the provision that, when prepayments are made, the treasurer shall notify the bondholders, when known, or give written notice to those presenting bonds or coupons, and, if the bondholders were not known, to then notify the contractor. If a property owner becomes delinquent in payment of any installment, the treasurer is required to notify the holder of the bonds, if known, of such delinquency. Bondholders who furnish the treasurer with their names and addresses and a description of the bonds held by them are entitled to such notice from the treasurer, who is required to keep a register of bondholders. When a property owner defaults in any payment, the treasurer is required to certify a list of all delinquencies to the county auditor, who, in turn, in making up his list of delinquent lots subject to sale for delinquent taxes, is required to certify all lands on which installments of special assessments for street improvements are delinquent, and such land is to be sold by the treasurer as other lands are sold for delinquent taxes. The bonds authorized by this section may be issued directly to the contractor, or they may be issued and sold as other city bonds, and, when issued, they convey the transfer to the holder all lien, right, title and interest in the assessment and lien on the lot for which the lien stands as security, with power to enforce collection by foreclosure, with a provision that such property shall not be sold for less than the amount of the assessment, attorney's fees and costs, and that the proceeds are to be distributed *pro rata* in payment of the bonds. All of such bonds are made negotaible as inland bills of exchange, and free from all defenses by

any property owner. Acts 1907, p. 550, §10454 Burns 1926.

Section 116, as originally enacted in 1905, provided, in part: "Failure to pay any installment of principal or interest when the same is due shall bring all installments of principal yet unpaid forthwith due and payable," and gave the owner of the bonds, or in case no bonds had been issued, the person to whom was due and owing the amount of such unpaid assessment, the right to proceed in any court of competent jurisdiction to enforce the liens or unpaid assessments, recovering interest, costs and a reasonable attorney fee, and to have the proceeds of sale applied to his claim. If any person defaulted in the payment of any installment of principal or interest, the treasurer was required to mail a notice of delinquency to such person, who was given 30 days from the date when the same was payable to pay such installment, with a fee to such treasurer of 25 cents for sending such notice. The failure to send such notice to any delinquent did not prevent the foreclosure of such lien after the expiration of such period of grace. This section specifically provided: *"No action shall be maintained for such foreclosure which is not commenced within three years from the time when the right of action accrues."* (Our italics.)

Said §116 was amended in 1907, Acts 1907, p. 550, §3, by omitting therefrom the provision that "failure to pay any installment of principal or interest when due, shall bring all installments of principal yet unpaid forthwith due and payable," and by providing that, if the city should fail to collect any unpaid assessment or installment thereof when due, the owner of the bonds, or the person to whom is due such unpaid assessment, "shall have the right to proceed in any court of competent jurisdiction to enforce the lien of *so much* of the assessments as *is due and unpaid*," etc. (our italics), and by

extending the time from *three* years to *five* years within which the action to foreclose could be commenced. This section was again amended, Acts 1909, p. 412, §7, §10455 Burns 1926, by reinserting the provision that "failure to pay any installment of principal or interest where (when) the same is due shall bring all installments of principal yet unpaid forthwith due and payable," and giving the bondholder, or if no bonds are issued, the person to whom is due and owing the amount of such unpaid assessment, the right to enforce the lien or the unpaid assessment, and providing that no action shall be maintained for "such" foreclosure which is not commenced within five years from the time the right of action accrues, and by providing: "If any assessment shall be prepaid after a waiver has been signed, the entire amount of such prepayments, together with all interest prepayments, shall be paid to the bondholder or bondholders on demand, or, in any event, not later than the first day of June or the first day of December thereafter, as the case may be. For the purpose of paying at maturity the bonds and coupons issued pursuant to the provisions of this ·act, the common council of any city shall have the power to appropriate money out of the general fund of such city for the payment of any delinquent special assessments, and in case any such delinquent assessments are so paid, such city shall be subrogated to the rights of such bond or coupon holder, and whenever thereafter such assessments are collected by voluntary payment or by tax sale or foreclosure, the amount so collected shall belong to the said city."

Sections 5 and 6 of "An act concerning liens upon real estate, the foreclosure and expiration thereof," approved March 6, 1909, Acts 1909, p. 334, are as follows:

Section 5: "No action shall be brought or maintained in any of the courts of this state to foreclose or enforce the liens of any assessment for streets, sewers, side-

walks, ditches or other assessments for public improvements in any case when the last installment of any such assessment has been due and payable over five years, as shown by the record creating and evidencing such lien." §308e Burns 1914.

Section 6: "The lien of all assessments for streets, sewers, sidewalks, ditches and other public improvements shall cease and expire five years from the time the same and the several installments thereof are due and payable, as shown by the record creating and evidencing such lien." §321 Burns 1926, §308f Burns 1914.

The question presented by appellant's assignment of error is whether the statute of limitations had sufficiently run to bar its right of foreclosure. Appellant's contention is that §§5 and 6 of said act of 1909 control, and that the statute of limitations did not begin to run until May 7, 1923, when the last installment became due, "according to the record creating and evidencing such lien," and that its right to foreclose would not be barred until May 7, 1928. In support of this contention, appellant says said sections were enacted subsequent to the enactment of §10455 Burns 1926, §8721 Burns 1914, and that the latter section does not control because, as appellant contends, it was repealed by §§5 and 6, *supra*.

Appellees contend that said §§5 and 6 do not control; that the object of said sections, and the act of which they are a part, is to prevent a tolling of the statute of limitations by payment or other things which might not be a matter of record; and that said sections are not applicable in the instant case where the law provides that the due date shall be accelerated by a failure to pay an installment when it becomes due. In other words, appellees insist that §10455, *supra*, controls and fixes the time within which this action should have been commenced; that the right to foreclose accrued in 1913, when

appellees failed to pay the first installment of their assessment within the 30-day period of grace.

These conflicting contentions present an interesting, though not a difficult, question, when rightly understood. They, however, do call for a careful consideration of the two statutes, the circumstances connected with their enactment and a correct application of the law pertaining to repeals by implication. These statutes having been passed at the same session of the legislature should be construed *in pari materia.*

Section 10455 Burns 1926, is §7 of an act which had for its purpose the amendment of the Municipal Code by amending §§107, 108, 109, 111, 112, and 265 as enacted in 1905, and to amend §116 as amended in 1907. This act is ch. 172 of Acts 1909, p. 412. It was introduced in the House, and was House bill No. 436.

The act of which said §§5 and 6 are a part is ch. 137 of Acts 1909, and was Senate bill No. 221. It passed the Senate February 19, 1909. It passed the House March 6, and was approved by the Governor the same day.

House bill No. 436 was passed by the House March 1. It passed the Senate March 4, with amendments. The House refusing to concur in these amendments, a conference committee was appointed, which, having reached an agreement eliminating certain of the amendments made by the Senate, so reported in the forenoon of March 6, when the report was concurred in by both House and Senate. In the afternoon of March 6, and after both houses had concurred in the report of the conference committee, Senate bill No. 221 was passed by the House without amendments, and was, on the same day, approved by the Governor. It thus appears that both of these bills were before the House and the Senate on March 6 for final consideration; that both houses finally acted upon them on that day, but, that the House did not act upon the Senate bill until after the Senate had agreed

to the report of the conference committee striking out and eliminating certain amendments which had been made to the House bill by the Senate. The House bill was approved by the Governor March 8, and, by reason of the emergency clause, went into effect on that day. The Senate bill, having no emergency clause, did not go into effect until the proclamation of the Governor on April 5.

The Senate amendments to House bill No. 436 did not relate to or affect §116, but it is important to keep in mind that the Senate made a number of amendments to this bill; that the House refused to concur in these amendments; and that the Senate bill was not passed by the House until after the report of the conference committee had been concurred in by the Senate. Each branch of the Legislature thus had its attention called to the importance of the House bill, and to the fact that it would, if approved by the Governor, be effective at once.

It would be an interesting question to determine which of the two acts is the later, the one approved March 8, and going into effect on that day, or the one approved March 6, and going into effect April 5, and what would be the effect of an irreconcilable conflict between them; but, being of the opinion that the two acts are not in irreconcilable conflict with each other, but are capable of being so construed as to give full effect to each, we are not called upon to determine which would control if there were an irreconcilable conflict.

In deciding which of the two statutes control, we must keep in mind and apply the following settled rules of construction:

(1) Repeals by implication are disfavored, and are never recognized in the absence of irreconcilable repugnancy, and then only to the extent of such repugnancy.

(2) Where two acts are seemingly repugnant, they

must, if possible, be so construed that the later will not operate as a repeal of the former.

(3) There is no irreconcilable conflict unless, after the application of every recognized rule of construction, substantial harmony is found impossible.

(4) The presumption against an implied repeal of an act by another of a later date, during the same session, is especially strong.

(5) Statutes relating to the same subject and enacted at the same session of the Legislature must be construed to give effect to each, rather than to infer that one destroys the other.

(6) The object of all rules of statutory construction. is the ascertainment of the legislative intent. In the search for such intent, it is proper to consider the common law and other statutes relative to the same subject-matter, together with contemporaneous legislative hisory and the evils at which the legislation was aimed.

(7) Repeal or no repeal, substitution or no substitution, is a question of legislative intention.

(8) Where two statutes passed at the same session of the Legislature are necessarily inconsistent, one dealing with the common subject-matter in a more minute way will prevail over the one of a more general character.

(9) If a later act can be construed as a modification or exception to an earlier one, thus avoiding all conflict between them, it should be so construed.

See *Kramer* v. *Beebe* (1917), 186 Ind. 349, 115 N. E. 83; *Cleveland, etc., R. Co.* v. *Blind* (1914), 182 Ind. 398, 422, 105 N. E. 483, 491; *State ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 85 N. E. 513; *Monical* v. *Heise* (1911), 49 Ind. App. 302, 94 N. E. 232; *United States* v. *Claflin* (1878), 97 U. S. 546, 24 L. Ed. 1082; *Wood* v. *United States* (1842), 41 U. S. 341, 10 L. Ed. 987; *State ex rel.* v. *Treasurer* (1864), 41 Mo. 16; *Riggs* v. *Pfister* (1852), 21 Ala. 469; *Peavy* v. *McCombs* (1914), 26

Idaho 143, 140 Pac. 965; *Chandler* v. *Lee* (1870), 1 Idaho 349; *Stuart* v. *Chapman* (1908), 104 Me. 17, 70 Atl. 1069; *Lambert, Mayor* v. *Board of Trustees, etc.* (1913), 151 Ky. 725, 152 S. W. 802, Ann. Cas. 1915A 180.

The cardinal principle of statutory construction is that it is the duty of courts to execute laws according to their true intent and meaning, as collected from the whole and every part of the statute taken together, and, when so collected, it must prevail even over the literal sense of the terms and control the strict letter of the statute where the letter would lead to possible injustice, contradiction or absurdity. *Chandler* v. *Lee, supra; Stuart* v. *Chapman, supra; Lambert, Mayor* v. *Board of Trustees, etc., supra.*

The fact that the House bill carried an emergency clause is important, as it serves to show that the Legislature believed there were urgent reasons why it should be passed and why it should go into effect at once. Among the cases holding that the fact that there being an emergency clause tends to show that the subject-matter of the Act containing such clause was more clearly and pointedly before the Legislature than the subject-matter of an act without such clause, see *Lambert, Mayor* v. *Board of Trustees, etc., supra; Heilig* v. *Puyallup City Council* (1893), 7 Wash. 29, 34 Pac. 164.

Section 116 of the act of 1905, provided in clear and decisive language that the failure to pay any installment of principal or interest when due brought all installments of principal yet unpaid forthwith due and payable. The bondholders were given the right to enforce their lien by foreclosure, with the limitation that such foreclosure could not be maintained unless commenced within three years from the time when the right of action accrued. And the right of action accrued upon

failure to pay any installment of principal or interest when due. *Marion Bond Co.* v. *Blakely* (1902), 30 Ind. App. 374, 65 N. E. 291, 66 N. E. 71.

The numerous foreclosure suits which were being prosecuted under said §116, and under §82 of the act of 1891, concerning cities of more than 100,000, each of which provided that a plaintiff was, in addition to the amount of the assessment, entitled to recover an attorney fee, which, in many instances, was equal to or greater than the assessment, is a matter of public knowledge. With knowledge of the situation, the Legislature, in 1907, amended said section, as hereinbefore stated, by omitting therefrom the provision making the entire assessment forthwith due upon a default in payment of any installment of principal or interest, and by providing that, when there had been such a default, the treasurer should give the property owner notice of such delinquency, and requiring 15 days' personal notice before a suit to foreclose could be maintained, limiting the amount of the attorney fee and extending the time within which such foreclosure suit could be commenced from three to five years. Under the amendment of 1907, if the installment due was tendered to the treasurer before suit was commenced, or within 15 days after the receipt of the notice, it was made the duty of the treasurer to accept the same and give credit therefor. In no event could an attorney fee be collected if suit had not been commenced.

The provision making all installments due upon default in the payment of any installment was, by amendment, reinserted in this section in 1909, when provision was also made authorizing the city to appropriate money out of the general fund of the city for the purpose of paying any delinquent assessment and subrogating the city to the rights of the bondholder in all such instances.

While the provision making all unpaid installments

due upon default in the payment of any one installment of principal or interest, and giving a right to bring an action to foreclose the lien, was clearly inserted for the benefit of the bondholder, and gave him the right to prosecute such an action, he took such right and benefit subject to all of the provisions of the statute giving him that right. And one of the provisions of the statute is that such action cannot be maintained unless it is commenced within five years from the time the right to prosecute such action accrues. It will not do to say this is a right given the bondholder to exercise at his option. He has an option to either bring the action when the right so to do accrues or to postpone bringing his action, but he has no right to postpone the bringing of his action for a longer period than five years. It might be more accurate to say if he delayed bringing his action more than five years, he does so at his peril. In the event no waivers have been signed and no bonds have been issued, the owner of the assessment lien is by this section given a right to prosecute an action to foreclose his lien. The right of the bondholder and the owner of the assessment lien when no bonds have been issued to foreclose are given and measured by the same provisions of the statute. The provision limiting the right to maintain an action to foreclose to five years applies to each of them alike.

If it be argued that the city has the right to, and may, in case a landowner fails to pay an installment when due, pay the amount of such installment to the bondholder out of the general fund of the city, and the bondholder not be informed of the default in time to commence his action within the five-year period, it is sufficient to say the statute makes provision by which the treasurer must give notice of any such default to bondholders whose addresses are known to him, and that it also provides that any bondholder may give the treasurer his

address, in which event the treasurer must keep a record of such address and at all times be in a position to notify the bondholder of such default.

While the bonds in question are by the statute made "negotiable as inland bills of exchange," and free from all defenses by any property owner, they are subject to all the burdens imposed on them by statute. While bonds belonging to the 10th series on their face are not due and payable until 10 years, the holder thereof is bound to know that a failure to pay an installment when due brings all unpaid installments of both principal and interest due and payable and gives him the right to enforce his lien by an action to foreclose the same, and that, if he does not exercise that right within the time given by statute, the right is lost. He must accept the right to foreclosure subject to the provision as to the time within which he must act.

Section 116 of the act as amended in 1909 is the particular section of the act giving the bondholder the right to foreclose, and specifically provides the time within which such right may be exercised, by the definite statement that no such foreclosure can be maintained if it is not commenced within five years from the time the right of action accrues. That same section provides that a failure to pay any installment of the assessment or any installment of the interest when due shall bring all the remaining installments of the assessment forthwith due and payable. Thirty days' grace is given the property holder in which to pay the assessment and interest. If such payment is not made, the bondholder may then bring an action to foreclose the lien. After the amendment of §116 in 1907, and prior to the amendment in 1909, the failure of a property owner to pay an installment did not make the other installments due and payable. The right of the bondholder to foreclose was limited to the particular installment in which there had

been a failure to pay when due. In other words, by the amendment of 1907, the right to foreclose as to the several installments was given. If there was a failure to pay the first installment, the action to foreclose could not be maintained if it was not commenced within five years from the time the right to foreclose accrued. If all of the installments except the last were paid when due, and there was a failure to pay the last installment when due, the action to foreclose could be commenced any time within five years from that time. The amendment of 1909 provided that a failure to pay any installment when due brought all of the installments due, and, instead of giving a right to foreclose on the several installments, gave the right to foreclose as to the whole of the installments not theretofore paid. The time within which such action could be maintained was limited to five years from the time the right to foreclose accrued. The provisions of said §116 as set out in the original act of 1905, and as amended in 1907 and 1909, are clear. Assuming that the act of March 6, 1909, speaks as of April 5, 1909, the date when it went into effect, and that it is therefore, the later in point of time than the act of March 8, which went into effect March 8, the question is whether any of the provisions of §§5 and 6 of the act of March 6, "concerning liens upon real estate, the foreclosure and expiration thereof," are in irreconcilable conflict with §116 as amended by the act of March 8.

Attention is called to the fact that said §5 was amended in the Senate on third reading by limiting its provisions to actions to foreclose to cases where the *last installment* of the assessment has been due and payable for more than five years as shown by the record creating and evidencing such lien. The words, "the last installment of," inserted as an amendment just before the passage of the bill, cannot be ignored. It limits the pro-

visions of that section to cases where the assessment is payable in installments and where the last installment has been due and payable over five years as shown by the record. It does not apply when the assessment is not payable in installments. If the Legislature had intended that this section should apply to an action to foreclose the lien where no waiver had been signed and where there could be no *last* installment, or to cases where there had been a default in the payment of the first or any other installment than the last, it would have been an easy thing for it to have used words expressing that intent, instead of amending the section so as to limit and restrict its application to a case where only the last installment has been due more than five years as shown by the record. The Legislature not only reinserted the provision that a failure to pay an installment of principal or interest when due made all of the unpaid installments due and payable—a provision which was in this section when it was first enacted in 1905, but omitted therefrom when amended in 1907—but, after having reinserted this provision in the section, in order to protect the landowner, it expressly enacted that such provision or default should not be applicable or effective unless there was a failure to pay within 30 days after the default. The right to prosecute an action of foreclosure does not accrue until after the period of grace has expired, and this period is not shown by the record creating and evidencing the lien.

The Legislature, by a specific and special act, has provided that a failure to pay an installment of an assessment for the improvement of a street within 30 days from the time when due shall bring all of the remaining unpaid installments due and payable, and give the bondholders a right to prosecute an action to foreclose as to all of such installments, with the provision that no such foreclosure can be maintained if

the action is not commenced within five years. This specific provision cannot be thwarted upon the theory that it conflicts with the provisions of a general law which simply provides that no action to foreclose liens for street improvements shall be maintained if not commenced within five years from the time the last installment is shown to be due according to the record creating and evidencing such lien. It is more reasonable to infer that the Legislature intended that the general and the specific acts should each be in full force and effect. The general act regulating the time within which the action should be commenced when a failure to pay the last installment of the assessment gave rise to a right of action, and the special act regulating the time within which such an action could be prosecuted when all of the unpaid installments had become due because of a failure to pay one of the installments within the time fixed by the statute. By so construing the two acts, we harmonize them, as we believe, in accordance with the legislative intention.

There are no express words of repeal in either of the two acts. The objects contemplated by one was to penalize a landowner who had failed to pay an installment of an assessment for which bonds had been issued, by making all unpaid installments due forthwith, and by providing that the foreclosure when brought should be for all of the unpaid installments instead of for the installment in which there had been a default, and fixing a time within which such foreclosure could be prosecuted. The other act simply fixed a time within which a foreclosure could be maintained when there was a failure to pay the last installment when due, as shown by the record, and limiting the time within which that particular action could be maintained. By so construing the act, we avoid a conflict between them and give force and effect to each of them.

Conceding that the act of March 6 is a later act than that of March 8, and speaks as of and from the date it took effect, and not from the date of the approval by the Governor, the question resolves itself into the more narrow inquiry, whether the provision in the latter act limiting the right to prosecute the foreclosure action has been repealed by necessary implication. Quoting from *Wood* v. *United States, supra,* at p. 362: "We say, by necessary implication; for it is not sufficient to establish, that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative or auxiliary. But there must be a positive repugnancy between the provisions of the new law and those of the old; and even then, the old law is repealed by implication, only *pro tanto,* to the extent of the repugnancy." If a later act can be construed as a modification or exception to the earlier one, thus avoiding all conflict between them, it must be given that construction. *State ex rel. v. Treasurer, supra; Riggs* v. *Pfister, supra.*

The intention of the Legislature is to govern, and this is to be gathered from the language used and the circumstances surrounding and connected with the passage of the act. A construction which will work an implied repeal is to be avoided if that can be done on any reasonable hypothesis. Statutes passed at the same session and relating to the same subject should be construed together to give effect to each rather than to infer that one destroys the other.

A later statute, general in its terms, and not expressly repealing an earlier statute, will not ordinarily affect the special provisions of such earlier statute. The reason for the application of this rule is that, in passing a special act, the Legislature has its attention directed to the special case which the act was made to meet, and it will not be considered that in passing a later general act it had the special circumstances in mind

which induced the passage of the provisions of the special act.

The Supreme Court, in *Yarlott* v. *Brown* (1923), 192 Ind. 648, 138 N. E. 17, after quoting §§1 and 2 of the act of March 6, which relates to the time within which actions to foreclose mortgages could be commenced, and when the lien of mortgages should cease, said: "Other sections of the act relate to mechanics' liens, and liens for municipal assessments for streets, sidewalks, ditches and other public improvements, and make the facts shown by the record conclusive as to when a cause of action accrues and the statutes of limitations begin to run, but do not change the time within which an action of either kind may be commenced after the right of action shall accrue, as fixed by statutes previously in force. §308c *et seq.* Burns 1914, Acts 1909 p. 334; §8299 Burns 1914, Acts 1909 p. 295, §6; §8721 Burns 1914, Acts 1909, p. 412."

It is to be observed that the act relating to mechanics' liens, Acts 1909, p. 295, was approved by the Governor on the same day he approved the act of which §§5 and 6 are a part, and that the act relating to mechanics' liens, having an emergency clause, went into effect immediately, while the one relating to the time within which actions to foreclose mortgages, mechanic and street improvement liens, referred to by the Supreme Court, and which appellant contends must control in the instant case, did not go into effect until April 5, 1909.

We hold §116 of the municipal code, as amended by the act of March 8, applicable, and that the court did not err in refusing to render a decree of foreclosure.

Appellee insists that appellant's right to recover on the written waiver or agreement signed by him wherein he agreed to pay the assessment was barred by reason of the 10-year statute of limitations. The first installment of the assessment owing by ap--

pellee became due on the first Monday in May, 1913. Adding the period of grace given by the statute, the statute of limitation began to run in June, 1913. The original complaint herein was filed and summons issued in March, 1923. While no copy of the agreement signed by appellee wherein he promised to pay the assessment was filed with or made a part of the complaint, it was sufficient in form and substance to show that appellant was asking for a personal judgment against appellee on such agreement. No new cause of action was stated in the amended complaint filed in March, 1924. Conceding, without deciding the question, that the 10-year statute of limitations is applicable to an action to recover on the agreement in question, we hold the action to recover on account of such agreement was commenced within 10 years from the time the right of action accrued, and that the court did not err in rendering personal judgment against appellee. It is questionable whether the 10-year statute of limitations is applicable in the instant case. See *Yarlott* v. *Brown, supra.*

As heretofore noted, Acts 1905, p. 219, §115, §10454 Burns 1926 makes it the duty of the treasurer in case property owners make default in the payment of assessments to certify a list of such delinquents to the county auditor, who, in making out the lists of lands and lots delinquent for non-payment of taxes, shall include therein such delinquent special assessments. Payment of such delinquent special assessments is to be enforced in the same manner as are delinquent taxes. Whether appellant has a right to have the delinquent installments certified to the auditor and to have the property so owned by appellee, and assessed for the improvement in question, sold at a tax sale is not before us and we express no opinion on that question. Nor is any question presented

as to whether the treasurer may or may not be liable to respond in damages to anyone because of his failure to certify the delinquencies as required by the statute.

Judgment affirmed.