# CASES

IN THE

# SUPREME JUDICIAL COURT

OF THE

# STATE OF MAINE

CHARLES C. STUART *vs.* GEORGE M. CHAPMAN.

SAME *vs.* HENRY F. ANDREWS.

Somerset.   Opinion February 25, 1908.

*Statutes. Amendments. Construction. Disclosure Commissioner. Jurisdiction. Execution Creditor. Liability of Disclosure Commissioner and Execution Creditor. Statute 1905, chapter 131; 1905, chapter 134. Revised Statutes chapter 114, sections 23, 38.*

The numbering of statutes is not a legislative act, but it is purely a ministerial act performed by executive officers in the office of the Secretary of State, and no presumption as to the order of time in which statutes were passed can arise from their numbering.

The approval of the Governor is the last legislative act which breathes the breath of life into a statute and makes it a part of the laws of the State.

Nothing appearing to the contrary, statutes approved on the same day are presumed to have been approved contemporaneously.

Statutes in pari materia are to be construed together so as to ascertain and carry out the legislative will.

Revised Statutes, chapter 114, section 23, was amended by Public Laws, 1905, chapter 131 and Public Laws, 1905, chapter 134. Both of the amendatory Acts were approved by the Governor the same day. *Held:* That these two Acts must be construed together and Revised Statutes, chapter 114 section 23, is to be read, as amended by both Acts, with the words stricken out by chapter 131 and the words inserted by chapter 134.

When a disclosure commissioner does not act within the limits of his jurisdiction, he is answerable in law for what he does without those limits and wholly outside of his powers and duties.

VOL. CIV  2

When a disclosure commissioner, acting in a disclosure matter, without juris-
diction, refuses the execution debtor the benefit of the oath provided by
Revised Statutes, chapter 114, section 55, and indorses upon the execution
the certificate required by Revised Statutes, chapter 114, section 38, and
annexes to the execution the capias required by said section 38, and such
debtor is arrested and committed to jail on such capias and execution,
such disclosure commissioner is liable in an action for false imprisonment.

When an execution debtor has been committed to jail on a capias annexed
to an execution by a disclosure commissioner who acted without jurisdic-
tion in the matter, and the execution creditor sends to the keeper of the
jail money to pay for the support of the execution debtor while in jail and
states to such keeper that more money will be sent for that purpose, if nec-
essary, it is an approval, adoption and ratification of the unlawful acts of
the disclosure commissioner and makes such execution creditor liable in
an action for false imprisonment.

Each wrong doer is liable for the whole amount of an injury sustained
although a plaintiff can have but one satisfaction.

*Rush* v. *Buckley*, 100 Maine, 322, distinguished.

On agreed statement of facts.   Judgment for plaintiff.

Actions of trespass for false imprisonment.   The agreed state-
ment of facts in the first named case is as follows :

"On November 9, 1905, one Henry F. Andrews. a resident of
Bangor in the County of Penobscot, applied, through his attorney,
H. H. Patten, also a resident of Bangor, to the defendant a dis-
closure commissioner within and for the County of Somerset, duly
qualified as such, for a subpœna summoning the plaintiff before
defendant as said commissioner to make, on oath, a full and true
disclosure of all his business and property affairs.   Said Henry F.
Andrews was then the owner of an execution against the plaintiff,
of which "Exhibit A" (omitted from this report) hereto attached
is a copy.

"Acting on said petition the defendant issued under his hand and
seal as said commissioner a subpœna commanding the plaintiff to
appear before him at his office in Fairfield in said County of
Somerset, on November 15, 1905, at ten o'clock in the forenoon,
to make on oath a full and true disclosure of all his business and
property affairs.   At said time and place the plaintiff appeared
before said Chapman for disclosure but on examination was refused
the benefit of the oath.   On the afternoon of that day the defend-
ant issued the capias of which 'Exhibit B' (omitted from this

report) hereto attached is a copy, and attached to the execution the certificate, of which 'Exhibit C' (omitted from this report) hereto attached, is a copy.

"The capias was delivered to William W. Nye of said Fairfield, a deputy sheriff for said County of Somerset, who arrested the plaintiff at about two o'clock that afternoon, detaining him in the town lock-up at Fairfield until eight o'clock that evening when he was committed to the county jail at Skowhegan. 'Exhibit D' (omitted from this report) hereto attached is a copy of the return of said William W. Nye.

"Immediately on being committed to jail, the plaintiff procured counsel relative to his discharge, and a petition for habeas corpus was at once presented to A. M. Spear, a Justice of the Supreme Judicial Court of Maine. On this petition the plaintiff was discharged from custody, the following Tuesday, the 21st of November, 1905, having been confined in Somerset jail since his commitment thereto, with the exception of the day at Augusta when the hearing on habeas corpus occurred, when he was in the custody of the sheriff, but not in jail. From the order of Judge Spear discharging the respondent the defendant appealed to the Law Court, where the case was argued by counsel orally, the appeal being finally dismssed.

"The plaintiff is, and was at the date of the disclosure proceedings referred to, a resident of Saint Albans in the County of Somerset. Both the said Henry F. Andrews and his attorney are, and were at the date of said disclosure proceedings, residents of Bangor in the County of Penobscot. The town of Fairfield is not the shire town of the County of Somerset.

"Plaintiff is engaged in the business of sawing lumber in the said town of Saint Albans, and has a wife and one daughter, nine years of age. Plaintiff's expense in procuring his release on habeas corpus, including counsel fees, was approximately $80.00.

"If upon the foregoing facts the plaintiff is entitled to recover, damages are to be assessed by this court; if not, judgment to be for the defendant."

The agreed statement in the second named case alleges that "on November 9, 1905, the defendant, being the owner of the execution of which ' Exhibit A ' (omitted from this report) hereto attached, is a copy, running against the plaintiff, applied in writing to George M. Chapman, Esq., of Fairfield, a disclosure commissioner within and for said County of Somerset, duly qualified as such, for a subpœna summoning the plaintiff before said Chapman as said commissioner to make, on oath, a full and true disclosure of all his business and property affairs," and then in substance recites the facts alleged in the first aforesaid agreed statement, and in addition thereto contains the following paragraph :

"During the confinement of the plaintiff in the Skowhegan jail the defendant sent to the keeper thereof money to pay for the support of the plaintiff in said jail, at the same time stating to said keeper that more money would be forthcoming if needed." Stipulations same as in the first aforesaid agreed statement.

Memorandum. Chapters 131 and 134, Public Laws, 1905, were repealed by chapter 2, Public Laws, 1907, and section 23 of chapter 114, Revised Statutes, was amended by said chapter 2 so as to read as follows :

"Section 23. Such magistrate shall thereupon issue under his hand and seal a subpœna to the debtor, commanding him to appear before such magistrate within said county, in the town in which the debtor, the petitioner or his attorney, resides, and in case there is no such magistrate in the town where the debtor, the petitioner or his attorney resides, then in a town where there is such a magistrate nearest to the place of residence of the debtor, the petitioner or his attorney, at a time and place therein named, to make full and true disclosure, on oath, of all his business and property affairs. The application shall be annexed to the subpœna. No application or subpœna shall be deemed incorrect for want of form only, or for circumstantial errors or mistakes, when the person and the case can be rightly understood. Such errors and mistakes may be amended on application of either party."

Note. The opinion in this case was prepared by Mr. Justice

POWERS while he was a member of the Bench but was not announced until several months after his resignation.

*Gould & Lawrence,* for plaintiff.

*H. H. Patten,* for defendants.

SITTING: SAVAGE, POWERS, PEABODY, SPEAR, KING, JJ., EMERY, C. J., WHITEHOUSE, STROUT, JJ., dissenting.

POWERS, J.    Actions of trespass for false imprisonment.

November 9, 1905, defendant Andrews, a resident of Bangor in Penobscot County, and the owner of an execution against the plaintiff, applied, through his attorney who was also a resident of Bangor, to the defendant Chapman, a disclosure commissioner for the County of Somerset, for a subpœna summoning the plaintiff, a resident of St. Albans in the County of Somerset, before said commissioner to make, on oath, a full and true disclosure of all his business and property affairs.    Thereupon the commissioner issued a subpœna commanding the plaintiff to appear before him at his office in Fairfield in the County of Somerset on Nov. 15, 1905, at ten A. M.    At that time and place the plaintiff appeared, but upon examination was refused the benefit of the oath.    The commissioner thereafterwards indorsed upon the execution the certificate and annexed to the execution the capias required by R. S., chapter 114, section 38.    The plaintiff was arrested and committed to jail on said capias and execution, and there remained until discharged on habeas corpus six days later.

No question is raised as to the regularity of the proceedings except in one particular.    The plaintiff contends that under the provisions of R. S., chapter 114, section 23, as amended by chapter 131 of the Public Laws of 1905, the commissioner had no power to summon him to a disclosure at Fairfield, a town in which neither the debtor, the petitioner nor his attorney resided, and which was not the shire town of Somerset County.    As said section stood prior to its amendment it provided that "where plaintiff or his attorney of record resides in one county and the defendant in another the debtor may be commanded to appear before such magistrate in

any town in the county where the defendant resides." By· said chapter 131, approved March 22, 1905, said section twenty-three was amended by striking out the words above quoted so that said section as amended would read, so far as relates to the question here involved, as follows:

"Section 23. Such magistrate shall thereupon issue under his hand and seal a subpœna to the debtor, commanding him to appear before such magistrate within said county, in the town in which the debtor, the petitioner or his attorney, resides or, in the shire town of said county, at a time and place therein named, to make full and true disclosure, on oath, of all his business and property affairs."

It is obvious that if this statute controls the plaintiff's contention cannot be gainsaid. The defendants, however, say that chapter 131 of the laws of 1905 was repealed by chapter 134 of the laws of that year which was also approved on the same day as chapter 131. Chapter 134 amended said section twenty-three by inserting after the word "county" in the "fifth" (fourth) line the words "and any town in which regular sessions of the Supreme Judicial Court are held, shall be considered a shire town for the purpose of this act so that said section as amended shall read as follows." Then followed a recital of section twenty-three with the above definition of a shire town following the word "county" in the fourth line but in all other respects the same as before amendment, and containing therefore the words stricken from the section by said chapter 131.

It is a familiar principle of statutory construction that a statute providing that a certain section of a prior act shall be amended "so as to read as follows," repeals by necessary implication all of the section of the prior act which is not re-enacted. Accordingly the defendants contend that chapter 134, being the last expression of the legislative will, must be deemed to be a substitute for all previous enactments, including chapter 131, and the only one which has the force of law. If the premise is sound, namely that chapter 131 is a prior act within the meaning of the principle above stated, the conclusion claimed logically follows. The rule invoked has heretofore been applied in cases of statutes enacted at different dates. In the case at bar the two statutes under consideration

were approved upon the same day, and went into effect the same moment of time. It is true that one bears a later or larger number than the other. The numbering of a statute, however, is not a legislative act. The legislature never undertakes to supervise or control it in any way. It is purely a ministerial act, performed by executive officers in the office of the secretary of State, when the laws of the session are collected and published after the legislature adjourns. No presumption as to the order of time in which statutes were passed can arise from their numbering. The last legislative act is the approval of the governor. When approved and not till then they became existing acts. _Palmer_ v. _Hixon_, 74 Maine, 447. There is nothing to show when this was done, except that they were both approved on the same day. It is urged by the plaintiff that the legislative journals show that chapter 134 was introduced into the legislature several days before chapter 131, and that, while both acts had their final passage on the same day, chapter 134 appears before chapter 131 in the list of bills passed and sent to the governor for approval. We cannot regard this as of any special significance because they were still incomplete statutes. The approval of the governor was the last legislative act which breathed the breath of life into these statutes and made them a part of the laws of the State. Moreover, as said by this court in _Weeks_ v. _Smith, et al,_ 81 Maine, 547, "No man should be required to hunt through the journals of a legislature to determine whether a statute, properly certified by the speaker of the house and president of the senate and approved by the governor is a statute or not."

Nothing appearing to the contrary, statutes approved on the same day are presumed to have been approved contemporaneously. _Harrington_ v. _Harrington_, 53 Vt. 649. This rule, easy to understand and simple in its application, allows statutes, which like those under consideration are in pari materia, to be construed together so as to ascertain and carry out the legislative will, that primary rule of statutory interpretation to which all others, including that so strenuously invoked by the defendants, are but corollaries. It avoids the absurdity of holding that the legislature, whose proceedings are presumed to be conducted with wisdom and deliberation, enacted and

repealed a statute upon the same day; or that the house and senate gravely and solemnly passed through all their several stages two inconsistent acts, either one of which would repeal the other, and sent them at the same time to the governor, intending that, and that alone, should become a law of the land to which he happened last to affix his signature.

It is perfectly evident that the legislature intended to make two amendments to section twenty-three. This it did by two separate acts, each one of which in reciting the section as amended necessarily recited it as though the other act did not exist, because such other act had not become a law and non sequitur that it ever would become one. Both, however, finally by the approval of the governor became statutes of the State at the same time. There is nothing inconsistent in the two amendments, one defining a shire town and the other striking out that part of the old statute which, where the plaintiff or his attorney resided in one county and the debtor in another, allowed the debtor to be cited for a disclosure in any town in the county in which the debtor resided. Force and effect can, and therefore should, be given to both amendments, and both must stand as statutes of the State. Section twenty-three reads, as thus amended by both statutes, with the words stricken out by chapter 131 and the words inserted by chapter 134. We apprehend that no man can have any doubt that this is precisely what the legislature intended to accomplish. The means it adopted were appropriate to the end, and we know of no iron rule of statutory interpretation which, under the circumstances of this case, must render its efforts abortive.

The defendant Chapman was a disclosure commissioner for Somerset County. When holding his court in the shire town of the county he had jurisdiction over the persons of all debtors within the county and power to hear and determine all disclosure cases of such debtors. When holding it in any other town in the county he had jurisdiction over the persons of such debtors only as resided in said town, or of debtors whose creditors or their attorneys resided in said town, and to hear and determine only such disclosure cases as those in which these jurisdictional facts were shown to exist. Neither the

debtor, creditor nor his attorney resided in Fairfield where the disclosure commissioner held his court. He had no power to hear and determine the case, no jurisdiction over the debtor's person, and no authority to issue a capias commanding his arrest and commitment to jail, and for so doing he is liable. The case at bar is clearly distinguishable from *Rush* v. *Buckley*, 100 Maine, 322, where a magistrate, who had the power to hear and determine cases of the general class to which the proceeding in question belonged, was held not liable for ordering the commitment of the plaintiff whom he had found guilty of an offense created by a void city ordinance. It more nearly resembles *Stilphen* v. *Ulmer*, 88 Maine, 211, where a trial justice of Knox County issued a warrant commanding the arrest of the plaintiff for an offense alleged to have been committed in Lincoln County. The disclosure commissioner was acting illegally, without any authority to hear or determine disclosure cases like the one in question, where neither the debtor, creditor nor his attorney resided in the town where he held his court, and without any jurisdiction over the person of the debtor. All this appeared by the undisputed facts recited by himself in the capias which he issued and which he himself delivered to the officer. He was not acting within the limits of his jurisdiction, and must therefore answer for what he did without those limits and wholly outside of his duties and powers.

In regard to the liability of the defendant Andrews it does not appear that he ordered the arrest or commitment, but the case does disclose that he approved, adopted and ratified those acts by sending to the keeper of the jail where the plaintiff was confined money to pay for the support of the plaintiff in jail and stated to the keeper that more money would be forthcoming if needed for that purpose. By so doing he made himself as liable for the arrest and unlawful detention as if he had ordered them in the first instance. "It never has been doubted that a man's subsequent agreement to a trespass done in his name for his benefit amounts to a command so far as to make him answerable." *Dempsey* v. *Chambers*, 154 Mass. 330. In the case at bar the defendant Andrews, by furnishing the money for the plaintiff's board in jail, not only ratified the

arrest and commitment as acts done in his behalf; but such conduct on his part necessarily resulted in prolonging the plaintiff's confinement in jail, and such was his purpose in furnishing the money and offering to furnish more. Here is something more than a mere failure to disavow the wrongful act of an agent, as in *Tucker* v. *Jerris*, 75 Maine, 184. The intention to affirm is clear. He is presumed to have known the law, and if he did not in fact know that the imprisonment was unlawful, an examination of the papers upon which his debtor was committed would have shown it. In any event in furnishing the money necessary to insure his debtor's continued deprivation of liberty, he acted at his peril, and, it proving unlawful, he must now abide the consequences.

The plaintiff's expense in procuring his release on habeas corpus was $80 and he was confined in jail from November 15, to November 21. He is entitled to some compensation beyond this for the disgrace and mental suffering which would naturally follow from his imprisonment.

Each wrong doer is liable for the whole amount of the injury sustained, although the plaintiff can have but one satisfaction. In each case

*Judgment for the plaintiff for $100.*