**OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT** Given Under the Provisions of Section 3 of Article VI of the Constitution.

Supreme Judicial Court of Maine.

Question Propounded by the Governor in a Communication Dated Oct. 18, 1989. Answered Oct. 27, 1989.

## COMMUNICATION FROM GOVERNOR PROPOUNDING QUESTION

October 18, 1989

To The Honorable Justices of the Supreme Judicial Court:

Believing that the failure to present to me L.D. 1794, "AN ACT to Authorize General Fund Bond Issues in the Amounts of $14,500,000 and $35,000,000 for Construction and Renovation of Correctional Facilities" (Attachment # 1) for my official action raises an important question of law upon a solemn occasion within the meaning of Article VI, Section 3 of the Constitution of Maine,

I, John R. McKernan, Jr., Governor of the State of Maine, pursuant to the authority conferred upon me by Article VI, Section 3 of the Constitution of Maine, respectfully request the opinion of the honorable Justices of the Supreme Judicial Court upon the question of law presented herein.

## STATEMENT OF FACTS

On July 15, 1977, the Department of the Attorney General opined that a bond issue under Article IX, Section 14 of the Constitution of Maine is a "bill or resolution, having the force of law" within the meaning of Article IV, Part 3, Section 2, and therefore must be presented to the Governor for his review and subsequent action. *Op. Me. Att'y Gen.* (July 15, 1977) (Attachment # 2). On August 10, 1989, the Department disapproved of this opinion, reasoning that because Article IX, Section 14 does not explicitly reference presentation to the Governor, and because the Department could not identify a legislative intent to accord the Governor an opportunity to approve or return bond issues, bond issues need not be presented to the Governor. *Op. Me. Att'y Gen. # 89–11* (Attachment # 3). Recognizing its inconsistent conclusions, the Department suggested in the latter Opinion that the Legislature "consider

requesting an Opinion of the Justices in this matter." *Id.* at 3.

On August 22, 1989, the House of Representatives and the Senate of the State of Maine passed L.D. 1794. Following final Senate approval of the bill, the President of Senate, relying upon the Attorney General Opinion of August 10, 1989, ordered the Secretary of the Senate to deliver L.D. 1794 to the Secretary of State for the ministerial act of preparing the bill for referendum. Section 11 of Part A and section 10 of Part B of L.D. 1794 require that the measure be referred to the voters on November 7, 1989. L.D. 1794 has not yet been presented to me for my official action, and attempts to effect presentation without resort to this Court have not succeeded. (*See* Attachment # 4).

I believe that this issue—whether a bond issue under Article IX, Section 14 must be presented to the Governor—is an important question of law regarding the intended scope of our Constitution's separation of powers. I further believe that the unique circumstances of this matter give it a live gravity and render this occasion solemn within the meaning of Article VI, section 3 of the Constitution of Maine; namely, that the failure to present a bond issue for gubernatorial action is unprecedented; that the Attorney General Opinions on point reach irreconcilable conclusions; that the issue is likely to reoccur in the future; and, most importantly, that L.D. 1794 will be submitted to the voters on November 7, 1989 for their approval. I believe that the need to ensure that L.D. 1794 has been properly enacted prior to this referendum presents the "unusual exigency" indicative of a solemn occasion. *Opinion of the Justices,* 355 A.2d 341, 390 (Me.1976); *Opinion of the Justices,* 339 A.2d 489, 491 (Me. 1975).

For the reasons stated above, I do, therefore, respectfully request the opinion of the honorable Justices of the Supreme Judicial Court on the following question of law:

### QUESTION OF LAW

1. Does Article IV, Part 3, Section 2 of the Constitution of Maine require that a bond issue under Article IX, Section 14 of the Constitution of Maine be presented to the Governor?

> Respectfully submitted,
> /s/ John R. McKernan, Jr.
> John R. McKernan, Jr.
> Governor

### ATTACHMENT # 1

### STATE OF MAINE

---

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED AND EIGHTY–NINE

---

### S.P. 673—L.D. 1794

**An Act to Authorize General Fund Bond Issues in the Amounts of $14,500,000 and $35,000,000 for Construction and Renovation of Correctional Facilities**

**Preamble.** Two thirds of both Houses of the Legislature deeming it necessary in accordance with the Constitution of Maine, Article IX, Section 14, to authorize the issuance of bonds on behalf of the State of Maine to provide funds for construction and renovation of correctional facilities.

**Be it enacted by the People of the State of Maine as follows:**

### PART A

**Sec. 1. Authorization of bonds to provide for construction and renovation of correctional facilities.** The Treasurer of State is authorized, under the direction of the Governor, to issue from time to time registered bonds in the name and behalf of the State to an amount not exceeding $14,-500,000 for the purpose of raising funds to provide for construction and renovation of correctional facilities as authorized by section 6 of this Part. The bonds shall be deemed a pledge of the full faith and credit of the State. The bonds shall not run for a longer period than 10 years from the date of the original issue of the bonds. Any issuance of bonds may contain a call fea-

ture at the discretion of the Treasurer of State with the approval of the Governor.

**Sec. 2. Records of bonds issued to be kept by the State Auditor and Treasurer of State.** The State Auditor shall keep an account of the bonds, showing the number and amount of each, the date when payable and the date of delivery of the bonds to the Treasurer of State who shall keep an account of each bond showing the number of the bond, the name of the successful bidder to whom sold, the amount received for the same, the date of sale and the date when payable.

**Sec. 3. Sale; how negotiated; proceeds appropriated.** The Treasurer of State may negotiate the sale of the bonds by direction of the Governor, but no bond may be loaned, pledged or hypothecated on behalf of the State. The proceeds of the sale of the bonds, which shall be held by the Treasurer of State and paid by the Treasurer of State upon warrants drawn by the Governor, are appropriated to be used solely for the purposes set forth in Part A of this Act. Any unencumbered balances remaining at the completion of the projects in section 6 of this Part shall lapse to the debt service account established for the retirement of these bonds.

**Sec. 4. Interest and debt retirement.** Interest due or accruing upon any bonds issued under Part A of this Act and all sums coming due for payment of bonds at maturity shall be paid by the Treasurer of State.

**Sec. 5. Disbursement of bond proceeds.** The proceeds of the bonds set out in section 6 of this Part shall be expended under the direction and supervision of the Director of Public Improvements in consultation with the Commissioner of Corrections.

**Sec. 6. Allocations from General Fund bond issue; correctional facilities.** The proceeds of the sale of bonds shall be expended as designated in the following schedule.

**CORRECTIONS, DEPARTMENT OF**

| | |
|---|---|
| Construction and Renovation – Maine Correctional Center | $200,000 |
| Construction and Renovation – Maine State Prison | 4,510,000 |
| Construction and Renovation – Charleston Correctional Facility | 100,000 |
| Construction and Renovation – Maine Youth Center | 5,020,000 |
| Construction – Juvenile Detention Facility in Northern Maine | 4,500,000 |
| Construction and Renovation – Downeast Correctional Facility | 100,000 |
| Construction and Renovation – Prerelease Centers | 70,000 |
| **DEPARTMENT OF CORRECTIONS TOTAL** | **$14,500,000** |

**Sec. 7. Transfer between items.** The amounts listed after the items in section 6 of this Part are to be construed as a guide. Any of the amounts may be exceeded with the approval of the Governor by transfer from one item to another not exceeding 10% in the aggregate.

**Sec. 8. Contingent on ratification of bond issue.** Sections 1 to 7 of this Part shall not become effective unless and until the people of the State have ratified the issuance of bonds as set forth in Part A of this Act.

**Sec. 9. Appropriation balances at year end.** At the end of each fiscal year, all unencumbered appropriation balances representing state money shall carry forward from year to year. Bond proceeds which have not been expended within 10 years after the date of the sale of the bonds shall lapse to General Fund debt service.

**Sec. 10. Bonds authorized but not issued.** Any bonds authorized but not issued, or for which bond anticipation notes have not been issued within 5 years of ratification of Part A of this Act, shall be deauthorized and may not be issued, provided that the Legislature may, within 2 years after the expiration of that 5-year period, extend the period for issuing any remaining unissued bonds or bond anticipation notes for an additional amount of time not to exceed 5 years.

**Sec. 11. Referendum for ratification; submission at statewide election; form of question; effective date.** Part A of this Act shall be submitted to the legal voters

of the State of Maine at a statewide election to be held on the Tuesday following the first Monday of November following passage of Part A of this Act. The city aldermen, town selectmen and plantation assessors of this State shall notify the inhabitants of their respective cities, towns and plantations to meet, in the manner prescribed by law for holding a statewide election, to vote on the acceptance or rejection of Part A of this Act by voting on the following question:

"Shall a bond issue be authorized in the amount of $14,500,000 to build and repair correctional facilities, $9,520,000 of which shall be for juvenile correctional facilities?"

The legal voters of each city, town and plantation shall vote by ballot on this question and shall designate their choice by a cross or check mark placed within a corresponding square below the word "Yes" or "No." The ballots shall be received, sorted, counted and declared in open ward, town and plantation meetings and returns made to the Secretary of State in the same manner as votes for members of the Legislature. The Governor shall review the returns and, if it appears that a majority of the legal voters are in favor of Part A of the Act, the Governor shall proclaim that fact without delay, and Part A of the Act shall become effective 30 days after the date of the proclamation.

The Secretary of State shall prepare and furnish to each city, town and plantation all ballots, returns and copies of Part A of this Act necessary to carry out the purpose of this referendum.

## PART B

Sec. 1. **Authorization of bonds to provide for construction and renovation of correctional facilities.** The Treasurer of State is authorized, under the direction of the Governor, to issue from time to time registered bonds in the name and behalf of the State to an amount not exceeding $35,000,000 for the purpose of raising funds to provide for construction and renovation of adult correctional facilities as authorized by section 6 of this Part, including the purchase of any residential structures that lie within 1000 feet of any maximum security prison site. The bonds shall be deemed a pledge of the full faith and credit of the State. The bonds shall not run for a longer period than 20 years from the date of the original issue of the bonds. Any issuance of bonds may contain a call feature at the discretion of the Treasurer of State with the approval of the Governor.

Sec. 2. **Records of bonds issued to be kept by the State Auditor and Treasurer of State.** The State Auditor shall keep an account of the bonds, showing the number and amount of each, the date when payable and the date of delivery of the bonds to the Treasurer of State who shall keep an account of each bond showing the number of the bond, the name of the successful bidder to whom sold, the amount received for the same, the date of sale and the date when payable.

Sec. 3. **Sale; how negotiated; proceeds appropriated.** The Treasurer of State may negotiate the sale of the bonds by direction of the Governor, but no bond may be loaned, pledged or hypothecated on behalf of the State. The proceeds of the sale of the bonds, which shall be held by the Treasurer of State and paid by the Treasurer of State upon warrants drawn by the Governor, are appropriated to be used solely for the purposes set forth in Part B of this Act. Any unencumbered balances remaining at the completion of the projects in section 6 of this Part shall lapse to the debt service account established for the retirement of these bonds.

Sec. 4. **Interest and debt retirement.** Interest due or accruing upon any bonds issued under Part B of this Act and all sums coming due for payment of bonds at maturity shall be paid by the Treasurer of State.

Sec. 5. **Disbursement of bond proceeds.** The proceeds of the bonds set out in section 6 of this Part shall be expended under the direction and supervision of the Director of Public Improvements in consultation with the Commissioner of Corrections.

**Sec. 6. Allocations from General Fund bond issue; adult correctional facilities.** The proceeds of the sale of bonds shall be allocated to the Department of Corrections and expended as deemed necessary for building, repair or renovation of adult correctional facilities.

**Sec. 7. Contingent on ratification of bond issue.** Sections 1 to 6 of this Part shall not become effective unless and until the people of the State have ratified the issuance of bonds as set forth in Part B of this Act.

**Sec. 8. Appropriation balances at year end.** At the end of each fiscal year, all unencumbered appropriation balances representing state money shall carry forward from year to year. Bond proceeds which have not been expended within 10 years after the date of the sale of the bonds shall lapse to General Fund debt service.

**Sec. 9. Bonds authorized but not issued.** Any bonds authorized but not issued, or for which bond anticipation notes have not been issued within 5 years of ratification of Part B of this Act, shall be deauthorized and may not be issued, provided that the Legislature may, within 2 years after the expiration of that 5-year period, extend the period for issuing any remaining unissued bonds or bond anticipation notes for an additional amount of time not to exceed 5 years.

**Sec. 10. Referendum for ratification; submission at statewide election; form of question; effective date.** Part B of this Act shall be submitted to the legal voters of the State of Maine at a statewide election to be held on the Tuesday following the first Monday of November following passage of this Act. The city aldermen, town selectmen and plantation assessors of this State shall notify the inhabitants of their respective cities, towns and plantations to meet, in the manner prescribed by law for holding a statewide election, to vote on the acceptance or rejection of Part B of this Act by voting on the following question:

"Shall a bond issue be authorized in the amount of $35,000,000 to build, repair or renovate adult correctional facilities?"

The legal voters of each city, town and plantation shall vote by ballot on this question and shall designate their choice by a cross or check mark placed within a corresponding square below the word "Yes" or "No." The ballots shall be received, sorted, counted and declared in open ward, town and plantation meetings and returns made to the Secretary of State in the same manner as votes for members of the Legislature. The Governor shall review the returns and, if it appears that a majority of the legal voters are in favor of Part B of the Act, the Governor shall proclaim that fact without delay, and Part B of the Act shall become effective 30 days after the date of the proclamation.

The Secretary of State shall prepare and furnish to each city, town and plantation all ballots, returns and copies of Part B of this Act necessary to carry out the purpose of this referendum.

ATTACHMENT # 2

STATE OF MAINE

DEPARTMENT OF THE ATTORNEY GENERAL

AUGUSTA, MAINE 04333

July 15, 1977

Honorable May M. Ross
Secretary of the Senate
Senate Chambers
State House
Augusta, Maine 04333
Dear Mrs. Ross:

We are responding to your letter of July 12, 1977, in which you asked two questions concerning the constitutional procedure to be used with legislation which is subject to referendum. Your questions are whether bills which have been passed by both Houses of the Legislature should be presented to the Governor for his approval or should be presented directly to the Secretary of State to be placed on a referendum ballot, when those measures are: (1) bond issue legislation passed under the provisions of Article IX, Section 14 of the Constitution of Maine; and (2) any other measure which

contains a referendum clause. The answer is that the legislative measures in both cases should be presented to the Governor for his approval pursuant to Article IV, Part Third, Section 2 of the Constitution of Maine.

Your questions require consideration of Constitutional provisions which read, in pertinent part:

"Every bill or resolution, having the force of law, to which the concurrence of both Houses may be necessary, except on a question of adjournment, which shall have passed both Houses, shall be presented to the Governor ..." Article IV, Part 3, Section 2.

"The Legislature shall not create any debt or debts ... which shall singly, or in aggregate ... exceed two million dollars, except ... that whenever two-thirds of both Houses shall deem it necessary, *by proper enactment* ratified by a majority of the electors voting thereon at a general or special election, the Legislature may authorize the issuance of bonds on behalf of the State ..." Article IX, Section 14. (Emphasis provided)

Article IX, Part Third, Section 19 of the Constitution would not relate to your questions except insofar as it allows the Legislature to include referenda provisions on legislation. The reference in that section to the Governor's veto power is not a limitation upon such power as is exercised before such legislation is sent to referendum.

The Justices of the Supreme Judicial Court have rendered an opinion which in large part answers your questions. In 1967 the Legislature passed an appropriations bill for additional expenditures of State government on condition that the legislation be ratified by the people at a referendum. The House of Representatives asked the Justices for their opinion on questions of whether such legislation had the force of law—so that it was necessary to present the act to the Governor for his consideration—and whether the Governor had the power to veto such legislation. The Justices answered these questions by giving their opinion that the presence of a referendum clause in a bill would not alter or modify the requirement of Article IV, Part Third, Section 2 of the Constitution with regard to presentation of such legislation to the Governor, and that the Governor has the power to veto bills which carry a referendum clause added at the discretion of the Legislature. The Justices concluded that if such bill was vetoed and the veto was subsequently overriden by the Legislature, the legislation would then be submitted to referendum. *Opinion of the Justices,* 231 A.2d 617 (Me., 1967).

The only remaining question is whether bond issue legislation, passed pursuant to the mandatory referendum provisions of Article IX, Section 14, would create an exception to the *Opinion of the Justices* examined above. It is our opinion that this additional factor would not cause an exception and that the rationale of the Justices would be equally applicable. Article IX, Section 14 provides that such legislation is permitted only by "proper enactment" of two-thirds of both Houses followed by ratification at referendum. The term "proper enactment" is not defined in the section. Nor is this terminology clarified by legislative or constitutional history.[1] Therefore, we must conclude that the term "proper enactment" refers to the standard legislative process which is used for all Acts and Resolves. This legislative process must include review by the Governor pursuant to Article IV, Part Third, Section 2, since approval by the Governor, or other post-review constitutional means of enactment, are the last legislative acts which "breathe life" into an enactment. *Stuart v. Chapman,* 104 Me. 17, 70 A. 1069 (1908). Consequently, bond issue legislation which is constitutionally required to contain a referendum clause, nevertheless must be presented to the Governor for his review and subsequent action.[2]

---

1. The pertinent provision of Article IX, Section 14 was added by Constitutional Amendment LXVII, pursuant to Resolves, 1949, C. 99 (H.P. 1571, L.D. 1885).

2. It is interesting to note in this regard that the Justices of the Supreme Judicial Court have also rendered their opinion that bond issue legislation may not be started through the initiative

The only apparent exception to the expressed opinion that legislation containing a referendum clause must be presented to the Governor for his review, is in the limited area of constitutional amendments. A Resolve proposing a Constitutional Amendment pursuant to the provisions of Article X, Section 4 would go directly to referendum without presentation to the Governor. *Opinion of the Justices*, 261 A.2d 53 (1970). It is noted by way of comparison, however, that the Constitutional provision regarding Constitutional amendments speaks in terms of a resolve being "passed" rather than being by "proper enactment."

We trust that the foregoing opinion will be helpful to you.

Sincerely,

(s) Joseph E. Brennan

JOSEPH E. BRENNAN
Attorney General

JEB:mfe

cc: Governor James B. Longley

Joseph Sewall, President of the Senate

John Martin, Speaker of the House

Honorable Jerrold Speer

Honorable David G. Huber

Honorable Gerard P. Conley

Honorable Peter W. Danton

Honorable James E. Tierney

Honorable Rodney S. Quinn

Honorable Linwood E. Palmer, Jr.

Honorable William J. Garsoe

ATTACHMENT # 3

STATE OF MAINE

DEPARTMENT OF THE ATTORNEY GENERAL

STATE HOUSE STATION 6

AUGUSTA, MAINE 04333

August 10, 1989

Senator Michael D. Pearson

Chairman, Joint Standing Committee on Appropriations

Maine State Senate

State House Station # 3

Augusta, Maine 04333

Dear Senator Pearson:

You have inquired whether legislation authorizing the issuance of bonds passed by two-thirds of both Houses of the Legislature pursuant to Article IX, Section 14 of the Maine Constitution must be presented to the Governor for his approval prior to submission to the voters of the State for their ratification. For the reasons which follow, it is the Opinion of this Department that the Governor's approval is not required for bond issues.

Article IX, Section 14 of the Maine Constitution provides, in pertinent part:

> The Legislature shall not create any debt or debts ... which shall singly, or in the aggregate ... exceed $2,000,000 ... excepting ... that whenever two-thirds of both Houses shall deem it necessary, by proper enactment ratified by a majority of the electors voting thereon at a general or special election, the Legislature may authorize the issuance of bonds on behalf of the State at such times and in such amounts and for such purposes as approved by such action....

This provision, which was added to the Maine Constitution by Amendment LXVII, effective October 12, 1950, is silent on its face regarding whether the participation of the Governor in the bond issuance process is required. Moreover, there is no indication in the legislative history of the provision whether its proponents intended that the Governor be so involved, nor has the issue of his involvement been addressed by the Maine Supreme Judicial Court. Thus, in answering your question, this Department is left only with the plain language of the provision to assist it.

In interpreting that language, one notes first that the operative language of the provision is that "whenever two-thirds of

process set forth in Article IX, Section 18. *Opinion of the Justices*, 159 Me. 209, 191 A.2d 357 (1963).

both Houses shall deem it necessary, ... the *Legislature* may authorize the issuance of bonds...." The provision thus stands in stark contrast to the provision of the Constitution governing the passage of ordinary legislation, which provides that "every bill or resolution, having the force of law, ... which shall have passed both Houses, *shall be presented to the Governor*...." *Me. Const.*, art. IV, pt. 3, § 2. (Emphasis added). On its face, therefore, the bond issue provision does not expressly contemplate participation by the Governor, whereas the provision governing ordinary legislation does.

The only issue which your question presents, therefore, is whether, by using the phrase "by proper enactment", the authors of the bond issue provision intended to incorporate by reference the provision of the Maine Constitution relating to the passage of ordinary legislation. In the absence of any legislative history to the contrary, however, this office is reluctant to reach such a conclusion, particularly when it is remembered that under the terms of the bond issue provision, two-thirds of each House (the number of votes required) to override a gubernatorial veto of ordinary legislation) must approve the bond issue in the first instance. In such a circumstance, it is difficult to conclude that the authors of the constitutional provision intended that the Governor have an opportunity to disapprove a bond issue, since the number of legislators necessary to override his veto would have already voted in favor of the issuance of the bonds by the time the authorization was presented to him.

This conclusion is bolstered by a 1970 Opinion of the Justice of the Supreme Judicial Court, interpreting a similar provision of the Maine Constitution dealing with constitutional amendments. Article X, Section 4 of the Maine Constitution provides that "The Legislature, whenever two-thirds of both Houses shall deem it necessary, may propose amendments to this Constitution...." As in the case of the bond issuance provision, it is the "Legislature" which in terms is given the power to act

(by two-thirds vote), and as in the case of the bond issuance provision, there is no mention of participation by the Governor in the process. The only textual difference in the two provisions is that the constitutional amendment provision specifies that the Legislature "may propose amendments" and that when such amendments are agreed upon, "a resolution shall be passed", while the bond issuance provision specifies that such action be taken "by proper enactment." The Justices of the Supreme Judicial Court concluded that the constitutional amendment provision did not require the participation of the Governor. *Opinion of the Justices*, 261 A.2d 53 (Me. 1970). Thus, in order to reach a different result in the context of the bond issuance provision, one would have to read a different meaning into the words "proper enactment" from that adopted by the Justices for the word "passed". For the reasons set forth above, this Department is reluctant, in the absence of any expression of legislative intention to the contrary, to read such a different meaning into the bond issuance provision language.

In reaching this conclusion, this Department is aware that it is inconsistent with the conclusion reached in part of an Opinion of the Department issued on July 15, 1977, a copy of which is attached. At pages 2–3 of that Opinion, the Department determined that the phrase "proper enactment" did incorporate by reference the provisions of Article IV, Part Third, Section 2, and thus require the participation of the Governor in the authorization of bond issues. Since the Department now concludes that such an intention should not be ascribed to the drafters of Article IX, Section 14 in the absence of any expression thereof, it must disapprove of its Opinion of July 15, 1977 to the extent that it suggests that the Governor's participation in bond issue authorizations is constitutionally required. In light of these differing conclusions, however, the Legislature might want to consider requesting an Opinion of the Justices in the matter.

I hope the foregoing answers your question. Please feel free to reinquire if further clarification is necessary.

Sincerely,

(s) James E. Tierney

JAMES E. TIERNEY
Attorney General

JET/ec

cc: Honorable John R. McKernan

Honorable Charles Pray, Senate President

Honorable John L. Martin, Speaker of the House

Honorable Donald V. Carter, House Chairman, Joint Standing Committee on Appropriations

Honorable John David Kennedy, Revisor of Statutes

ATTACHMENT #4

LEGISLATIVE RECORD – SENATE, AUGUST 22, 1989 – PROOF

Out of order and under suspension of the Rules, the Senate considered the following:

PAPERS FROM THE HOUSE

Joint Order

The following Joint Order:    H.P. 1313

ORDERED, the Senate concurring, that the following specified matters be held over to any special session or the Second Regular Session of the 114th Legislature:

| COMMITTEE | BILL |
|---|---|
| Appropriations and Financial Affairs | (H.P. 1303) (L.D. 1804) An Act Concerning Reimbursement to Municipalities with Certain State Facilities |
| Education | (H.P. 1305) (L.D. 1805) – An Act Concerning Geographic Isolation Grants |

Comes from the House READ and PASSED.

Which was READ and PASSED, in concurrence.

---

Out of order and under suspension of the Rules, the Senate considered the following:

ENACTORS

The Committee on Engrossed Bills reported as truly and strictly engrossed the following:

Emergency

An Act to Establish the Bureau of Juvenile Corrections

H.P. 1147 L.D. 1590
(S "A" S–466 to H "A" H–724)

This being an Emergency Measure and having received the affirmative vote of 31 Members of the Senate, with No Senators having voted in negative, and 31 being more than two-thirds of the entire elected Membership of the Senate, was PASSED TO BE ENACTED and having been signed by the President, was presented by the Secretary to the Governor for his approval.

---

Out of order and under suspension of the Rules, the Senate considered the following:

ENACTORS

The Committee on Engrossed Bills reported as truly and strictly engrossed the following:

Bond Issue

An Act to Authorize General Fund Bond Issues in the Amounts of $35,000,000 and $14,500,000 for Construction and Renovation of Correctional Facilities

S.P. 673 L.D. 1794
(S "B" S–464 to C "A" S–454)

This being a Bond Authorization Act and having received the affirmative vote of 31 Members of the Senate, with No Senators having voted in negative, and 31 being more than two-thirds of the Membership present and voting was PASSED TO BE ENACTED and having been signed by the President, was presented by the Secretary to the Secretary of State.

---

Out of order and under suspension of the Rules, the Senate considered the following:

ORDERS

On motion by Senator CLARK of Cumberland, the following Senate Order:

ORDERED, that a message be sent to His Excellency, Governor John R. McKernan, Jr., informing him that the Senate has transacted all business which has come before it and is ready to Adjourn Without Day and to receive such communication as he may be pleased to make.

Which was READ and PASSED.

The President appointed the Senator from Cumberland, Senator CLARK to deliver the meassage to His Excellency, the Governor.

Subsequently, the Senator from Cumberland, Senator CLARK reported that she had delivered the message with which she was charged.

---

On motion by Senator DUTREMBLE of York, the following Senate Order:

STATE OF MAINE

OFFICE OF THE GOVERNOR

AUGUSTA, MAINE

04333

September 27, 1989

The Honorable Charles P. Pray, President

Maine State Senate

State House Station # 3

Augusta, Maine 04333

Dear President Pray:

I am writing to you with regard to L.D. 1794, "An Act to Authorize General Fund Bond Issues in the Amounts of $35,000,000 and $14,500,000 for Construction and Renovation of Correctional Facilities," which was enacted by the Legislature on August 22, 1989 and which is subject to voter approval this November. As you know, this bill was not presented to me for my signature but rather was forwarded directly to the Secretary of State's office. I presume that such action, apparently unprecedented, was taken in reliance upon an opinion of the Attorney General dated August 10, 1989.

The Attorney General's letter, which concluded that he is reluctant to read into the statutory bond issuance language a requirement that bonds be presented to the Governor for approval, reverses a 1977 opinion of that department reaching a contrary conclusion. But the Attorney General also implied in his letter that the issue was sufficiently unclear that "the Legislature might want to consider requesting an Opinion of the Justices in the matter."

Members of my staff have had direct discussions with both the Attorney General and with members of his staff regarding the potential problems created by this action of the Legislature. We agree that, since this matter has not been resolved definitively by judicial interpretation, there is a risk that opponents of this bond issue could challenge its proper enactment. Of course, if such a challenge were to be successful, this legislation could be held to be invalid, and thus not subject to approval in November. For obvious reasons, I have serious concerns about that potential consequence.

Due to the time constraints under which we are operating, I would ask that you contact Sawin Millett at your earliest convenience to discuss the possible alternatives for enabling this bill to be presented to me for my signature.

I appreciate your cooperation regarding this very important matter. Needless to say, this issue is far too critical to be the potential "test case" to determine whether the Legislature is constitutionally empowered to enact bond issuance legislation without approval of the Governor.

Thank you very much.

Sincerely,

/s/ John R. McKernan, Jr.

John R. McKernan, Jr.

Governor

JRM/rds

cc: Speaker of the House John L. Martin

Attorney General James E. Tierney

Secretary of State William G. Diamond

## ANSWER OF THE JUSTICES

To His Excellency, John R. McKernan, Jr., Governor of Maine:

■ In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit this response to the following question you propounded on October 18, 1989.

Does Article IV, Part 3, Section 2 of the Constitution of Maine require that a bond issue under Article IX, Section 14 of the Constitution of Maine be presented to the Governor?

Our answer is yes.

Article IV of the Constitution of Maine deals generally with the "Legislative Power" and grants the Legislature "full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State...." Me. Const. art. IV, pt. 3, § 1. It further provides:

Every bill or resolution, having the force of law, to which the concurrence of both Houses may be necessary, except on a question of adjournment, which shall have passed both Houses, shall be presented to the Governor, and if the Governor approves, the Governor shall sign it; if not, the Governor shall return it with objections to the House, in which it shall have originated, which shall enter the objections at large on its journals, and proceed to reconsider it.

Me. Const. art. IV, pt. 3, § 2 (amended 1988). In general, then, measures within the legislative power and "having the force of law" must always be presented to the Governor.

We construe article IX, section 14, of the Maine Constitution as restricting rather than expanding the scope of the general legislative power. *Opinion of the Justices*, 53 Me. 587, 588 (1867) (dealing with its predecessor, the sixth amendment, article 6). Specifically, that provision creates a limitation on the legislative power to create debt:

The Legislature shall not create any debt or debts, liability or liabilities, on behalf of the State, which shall singly, or in the aggregate, with previous debts and liabilities hereafter incurred at any one time, exceed $2,000,000....

Me. Const. art. IX, § 14 (amended 1984). Except for certain specified emergencies, the only way the Legislature may avoid this limitation on its power is that

whenever two thirds of both Houses shall deem it necessary, by proper enactment ratified by a majority of the electors voting thereon at a general or special election, the Legislature may authorize the issuance of bonds on behalf of the State at such times and in such amounts and for such purposes as approved by such action....

*Id.* Article IX, section 14, provides specifically that a measure for the issuance of bonds cannot be submitted to referendum until two preliminary conditions are met: "until 'two-thirds of both Houses shall deem it necessary' and until there shall have been 'proper enactment.' " *Opinion*

*of the Justices*, 159 Me. 209, 215, 191 A.2d 357, 360 (1963). The requirement of "proper enactment" refers to the process by which a legislative measure is passed by both Houses and signed by the Governor (or, if he vetoes the measure, is passed by a two-thirds vote over his veto and the proper amount of time lapses, Me. Const. art. IV, pt. 3, § 2 (amended 1988)). The Law Court stated as long ago as 1908 that "[t]he last legislative act is the approval of the governor. When approved and not till then [legislative measures] became existing acts.... The approval of the governor was the last legislative act which breathed the breath of life into these statutes and made them a part of the laws of the State." *Stuart v. Chapman*, 104 Me. 17, 23, 70 A. 1069, 1072 (1908). We conclude, therefore, that under article IX, section 14, "proper enactment" of a bond issue that exceeds the $2,000,000 limit requires presentation of the measure to the Governor before ratification at a referendum.

We note that presentation to the Governor is required for ordinary legislation that the Legislature chooses to condition upon approval at a referendum. The necessity for ratification by referendum does not change the measure from one "having the force of law." *Opinion of the Justices*, 231 A.2d 617, 619 (Me.1967). The situation is different, however, when the Legislature proposes amendments to the Constitution by passing a resolution under article X, section 4. *See* Me. Const. art. X, § 4 (amended 1957). There, it "is not exercising its power to make laws." *Opinion of the Justices*, 261 A.2d 53, 57 (Me.1970). Because such a proposal does not have "the force of law," article IV, part 3, section 2 is inapplicable and the "Governor is not a party" to the initiation of the proposed amendment. *Id.*

Finally, the legislative history of article IX, section 14, is consistent with our construction. The debt limitation on the legislative powers was first adopted in 1848. Authority to exceed the debt ceiling upon a two-thirds vote, proper enactment and referendum ratification was added in 1950. The submissions of the Governor and the

Attorney General agree that until today all bond issues have been presented to the Governor for his signature. Indeed, the first bond measure following the 1950 amendment to article IX, section 14, was presented to the Governor for signature in the usual manner. *See* 231 Signed Copy of the Law 1232 (May 18, 1951) (citation to original copy found in Maine State Archives); 1953 Me.Laws 1022–23. Thus, we find no evidence that the framers of the 1950 change contemplated any deviation from the practice of presenting such measures to the Governor.

Dated: October 27, 1989

VINCENT L. McKUSICK
Chief Justice
DAVID G. ROBERTS
DANIEL E. WATHEN
CAROLINE D. GLASSMAN
ROBERT W. CLIFFORD
D. BROCK HORNBY
SAMUEL W. COLLINS, Jr.
Associate Justices